UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

PATRICK O'REILLY MALOY,

Debtor.

Case No. 26-00023-swd
Chapter 13
Hon. Scott W. Dales

PATRICK O'REILLY MALOY,

Plaintiff,

v.

DUNA VISTA RESORTS, TIMOTHY REIMINK, BRIAN MONTON, MONTON LAW, PLC, PRINCE & MONTON, PLC, OCEANA COUNTY, OCEANA COUNTY REGISTER OF DEEDS, THE HUNTINGTON NATIONAL BANK, and DOES 1-10,

Defendants.

Adversary Pro. No. 26-80066

MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES
Chief United States Bankruptcy Judge

## I. INTRODUCTION

*Pro se* chapter 13 debtor Patrick O'Reilly Maloy (the "Plaintiff") filed this adversary proceeding against multiple individuals and entities, including Brian Monton and two firms associated with Mr. Monton—Monton Law, PLC, and Prince & Monton, PLC.[1] In his complaint (ECF No. 1, the "Complaint") Mr. Maloy alleges that Mr. Monton, through his role as the Oceana County Public Administrator ("OCPA"), systematically conspired to deprive him of his residence,

[1] The court will refer to Mr. Monton, Monton Law, PLC, and Prince & Monton, PLC, collectively as the "Defendants."

the property commonly known as 9394 N. Montgomery Blvd., Pentwater, Michigan (the "Property"). Additionally, Mr. Maloy accuses Mr. Monton of using confidential client files held by Prince & Monton, PLC, against him in an Oceana County Circuit Court Case (Case No. 22-15625, the "State Court Action") that his homeowner's association, Duna Vista Resorts ("DVR"), filed against him to collect nearly twenty years' worth of unpaid homeowners association ("HOA") assessments. The Defendants jointly filed their motion to dismiss (ECF No. 11, the "Motion to Dismiss"); the Plaintiff responded (ECF No. 27); and the Defendants replied (ECF No. 29). The court has carefully reviewed the papers, decided that oral arguments are not necessary for this matter, and will grant the Motion to Dismiss.

## II. FACTUAL BACKGROUND

The supposed conspiracy to take the Property from Mr. Maloy began in 2008, when Huntington National Bank ("Huntington") obtained a foreclosure judgment against Mr. Maloy, by default, despite his active, overseas military service as a United States Marine and contrary to the Servicemembers Civil Relief Act. Complaint at ¶¶ 31-32. Over the next several years, Mr. Maloy fought to regain his interest in the Property, battling Huntington in a partition action but eventually settling the matter in 2015. *Id.* at ¶ 33. During the litigation against Huntington, attorney Jim Prince, Brian Monton's prior law partner, allegedly represented Mr. Maloy or his family members, or all of them. *Id.* at Exh. E, ¶ 10.

While ownership of the Property during this period is unclear, Mr. Maloy's sister—Joean Maloy Mysliwiec—emerged as the owner of the Property after the dust settled. Eventually, on June 22, 2022, Mr. Maloy's sister quit claimed her interest in the Property to him, *id.* at Exh. J, and shortly thereafter, DVR filed a foreclosure action against him to collect the long-overdue HOA dues, assessments, and fees, which encumbered the Property, at least according to DVR.

*Id.* at ¶ 39. As noted above, Mr. Monton represented DVR in the State Court Action against Mr. Maloy.

The Plaintiff vigorously, but unsuccessfully, contested the State Court Action, arguing that: (1) DVR's covenants and restrictions had expired; (2) Mr. Monton could not represent DVR due to his law firm's prior representation of Mr. Maloy or his family members in the litigation with Huntington; and (3) the HOA dues, assessments, and fees were time-barred under various Michigan statutes. *Id.* at ¶¶ 35-38. The presiding judge in the State Court Action, the Hon. Susan Sniegowski, however, rejected Mr. Maloy's arguments and theories and granted DVR's motion for summary disposition in an opinion dated Aug. 8, 2024. (Base Case, ECF No. 71 at Exh. AF, the "State Court Opinion").[2] Several months later, on June 20, 2025, Judge Sniegowski entered a foreclosure judgment based on DVR's successful summary disposition motion, awarding a total of $52,790.62, and directing the sale of the Property, if necessary, to satisfy DVR's claim. *Id.* at Exh. I (the "Judgment").[3] Mr. Maloy appealed from the Judgment, skirmished with DVR regarding a bond pending appeal, but on the eve of the foreclosure sale, he filed a voluntary petition under chapter 13, commencing the Base Case, effectively staying the sale and the appeal.

In between the Judgment and the Plaintiff's bankruptcy filing, DVR (with Mr. Monton's assistance) filed a Sworn Notice of Claim/Interest in Real Estate to conform to recent amendments of Michigan's Marketable Record Title Act, M.C.L. § 565.101 *et seq.* ("MRTA"). *Id.* at Exh. A (the "Sworn Notice"). Additionally, Mr. Maloy alleges that DVR and Mr. Monton are involved

[2] The court shall refer to Mr. Maloy's chapter 13 bankruptcy case (Case No. DG 26-00023) as the "Base Case."

[3] In the State Court Opinion, Judge Sniegowski found that: (1) DVR's covenants and restrictions appear within the chain of title for the Property; (2) neither Mr. Maloy nor his predecessors in interest made any payment to DVR since 2005; (3) on June 21, 2022, DVR recorded a Statement of Unpaid Dues and Assessments and Claim of Lien against the Property; (4) Brian Monton was not the attorney of record for any of Mr. Maloy's prior actions and therefore did not have a conflict of interest in representing DVR; and (5) DVR assessed the HOA dues on a continuous and open account and therefore timely brought suit under the applicable statutes of limitation.

in orchestrating and "weaponizing" a post-petition incident on May 25, 2026, in which Mr. Maloy's dogs broke free from the Property and bit a nearby beachgoer. *Id.* at ¶¶ 47-48.[4]

## III. STANDARD GOVERNING DISMISSAL MOTIONS

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences" in support of the relief requested. *Iqbal*, 556 U.S. at 678. The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023) (internal quotation marks and citation omitted). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Finally, while a "*pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), even under this more lenient standard *pro se* plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Stated differently, accommodating a *pro se* plaintiff's unfamiliarity with the legal process "does not require a court to conjure allegations on a litigant's behalf." *Id.* (internal quotation marks and citation omitted).

## IV. ANALYSIS

The Defendants argue that either the Oceana County Circuit Court or this court previously addressed most of the issues in the Complaint, and the Plaintiff is prevented from relitigating those issues under a litany of preclusion doctrines. With respect to the allegations unaffected by

[4] Mr. Maloy contends that because of the dog-bite incident, local law enforcement authorities, presumably at the behest of DVR or Mr. Monton, charged him with a misdemeanor under M.C.L. § 433.12.

preclusion doctrines, they argue that the Complaint fails to state a claim for relief. The court agrees.

First, the Judgment has preclusive effect, even in this Adversary Proceeding, as required under the Full Faith and Credit Act, and as the court took pains to explain in resolving Mr. Maloy's earlier objection to DVR's claim in the Base Case. *See* 28 U.S.C. § 1738. Indeed, the court's own recent decision is also preclusive.

With respect to the Judgment, Michigan law determines its preclusive effect. Under Michigan law, a party to the prior action (or one in privity with such a party) may assert the preclusive effect of the earlier final judgment. Michigan defines these two terms:

> A party is one who was directly interested in the subject matter and had a right to defend or to control the proceedings and to appeal from the judgment, while a privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase.

*Rental Properties Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*, 866 N.W.2d 817, 835 (Mich. Ct. App. 2014). This requirement ensures "mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 850 (Mich. 2004).

Mr. Monton, however, is neither a party to the State Court Action nor in privity: as DVR's attorney in the State Court Action, he is DVR's agent (not the principal), and the Judgment affected his client's interests, not his.

Nevertheless, as the Defendants' citation to *Monat* implies, Michigan recognizes the non-mutual, defensive use of collateral estoppel or issue preclusion in a later action by a person who was not a party to a prior action (or a privy). Michigan's Supreme Court explained: "[W]e believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit." *Id.* The court, in its Memorandum of Decision

and Order dated July 29, 2026 (Base Case, ECF No. 147, the "MDO"), previously determined that Mr. Maloy had a full and fair opportunity to litigate in the State Court Action. Therefore, under Michigan law, the Defendants may assert the preclusive effect of the Judgment under non-mutual, defensive collateral estoppel. Moreover, as the court warned in its MDO, the MDO itself would have preclusive effect not just in the Base Case, but also in this Adversary Proceeding.[5]

To prevail using the preclusion tack, the Defendants have to show that "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; and (2) "the same parties must have had a full and fair opportunity to litigate the issue." *Monat*, 677 N.W.2d at 682-83. To succeed in dismissing counts not affected by the Judgment or the MDO, the Defendants must independently establish that the Complaint fails to state a claim, i.e., without reference to the Judgment or MDO.

With these principles in mind, the court will move count by count through the Plaintiff's complaint, giving reasons for dismissing each count against the Defendants.

a. Count III and VIII: Marketable Record Title Act and Slander of Title Theory

Mr. Maloy states that the Sworn Notice that DVR prepared (and Mr. Monton filed in the Oceana County land records) violates the MRTA. Generally, he contends that Mr. Monton (as DVR's attorney) violated the MRTA by counseling DVR to attach invalid liens to the Property.

---

[5] *See* MDO at n. 3 ("[M]any of the conclusions the court reaches today will reverberate in the adversary proceeding under preclusion doctrines akin to those at issue in the Objection."). For example, the court lacks jurisdiction to review, strike, revise or otherwise modify the Judgment. *See* MDO at p. 5; *see also T.M. v. University of Maryland Medical System Corporation*, 608 U.S. 668, 680 (2026) (Rooker-Feldman bars federal trial court review of state court orders, regardless of whether the state-court judgment remains subject to further review in state appellate proceedings). As for the preclusive effect of the MDO itself, under the law-of-the-case-doctrine the court will not revisit the MDO's holdings, and other decisions in the Base Case, including the decision to allow DVR's claim in the amount of $56,759.16. *See Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (the law-of-the-case doctrine provides that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation"); *see also Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) and *Artra Group v. Salomon Bros. Holding Co.*, Adv. Pro. No. 93-A-1616, 1996 WL 637595, at *5 (N.D. Ill. Oct. 31, 1996) (holding that the law of the case doctrine covers both litigation in the main case and in adversary proceedings because adversary proceedings are subparts of the main case).

As it relates to Mr. Monton, the Plaintiff asserts that Mr. Monton's recording of the Sworn Notice listing Mr. Maloy as a "grantor" and DVR as a "grantee," slandered his title in violation of M.C.L. § 565.108 and under Michigan's common law. Mr. Maloy's assertions fail for numerous reasons.

First, Mr. Maloy is estopped from asserting that DVR's covenants and restrictions expired in 2010 because Judge Sniegowski ruled against him on this issue in the State Court Action. *See* State Court Opinion at p. 2.[6] Additionally, this court has already allowed DVR's proof of claim in the amount of $56,759.16—a decision expressly premised on the *bona fides* of the lien—and the court will not relitigate that issue under the law-of-the-case doctrine.

Turning to Mr. Maloy's slander of title claims, both statutory and under common law, Mr. Maloy's allegations against Mr. Monton also fail. The MRTA section in question states that, "no person shall use the privilege of filing notices for the purpose of slandering the title to land…." M.C.L. § 565.108. To state a claim for slander of title under Michigan common-law, the Plaintiff must show "falsity, malice, and [pecuniary damages or] special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Wells Fargo Bank v. Country Place Condo Ass'n*, 848 N.W.2d 425, 433 (Mich. Ct. App. 2014) (internal citations omitted). Importantly, "the same three elements are required in slander of title actions brought under MCL 565.108." *Id.*

---

[6] Even if Mr. Maloy could challenge the viability of DVR's covenants and restrictions, recent amendments to the MRTA likely negate his analysis. *See* M.C.L. § 565.104(g) ("[the MRTA] must not be applied to … [b]ar or extinguish any interest created by any declaration or other instrument or agreement executed and recorded on or after January 1, 1950, as the declaration or other instrument or agreement may be amended, that subjects the land to any use or other restriction or obligation, burden, or benefit with respect to each lot or other parcel of land that is the subject of the declaration or other instrument or agreement."); *see also* Senate Analysis, Senate Fiscal Agency, dated September 17, 2025 ("[recent MRTA] amendments reportedly had inadvertent consequences in some people's abilities to preserve interests, and some people still did not know about the timely need to preserve interests. Accordingly, the bill [adding M.C.L. § 565.104(g)] has been suggested to modify the process and timeline for preserving interests in property.").

Mr. Maloy erroneously alleges in both Count III and Count VIII that Mr. Monton filed the Sworn Notice knowing it was false, again premised on the idea that DVR's covenants and restrictions expired in 2010. As stated above, Mr. Maloy cannot assert that DVR's covenants and restrictions expired in 2010 because Judge Sniegowski ruled against him on this issue in the State Court Action. *See* State Court Opinion at p. 2. Therefore, Mr. Maloy is precluded from relitigating whether DVR's covenants and restrictions apply to the Property under non-mutual, defensive, collateral estoppel. As a matter of law, he cannot establish falsity or damages from any false statement.

Additionally, Mr. Maloy's assertion is premised on the fact that the Sworn Notice lists Mr. Maloy as a grantor and DVR as a grantee *for indexing purposes*, which, in his view, make it so that he is not the owner of the Property.[7] Because Michigan requires county officials to record claims against real estate using a grantor/grantee index, it was permissible if not mandatory to identify Mr. Maloy as the "grantor" for indexing purposes, even though DVR's claim arose under the HOA documents and related statutes affecting HOAs. As this court has already determined in the Base Case, Mr. Maloy owns the Property. *See* Base Case, Order dated April 6, 2026, ECF No. 62 ("[Mr. Maloy] is the owner of real property located at 9394 N. Montgomery Blvd, Pentwater, MI 49449").

Therefore, because Mr. Maloy cannot relitigate that DVR's covenants and restrictions run with the land, he cannot plausibly plead a claim for relief regarding Count III and Count VIII.

---

[7] Indeed, Michigan only requires counties to keep records in a grantor-grantee index, likely causing Mr. Maloy's confusion. *See First Nat. Bank of Chicago v. Department of Treasury*, 760 N.W.2d 775, 782 (Mich. Ct. App. 2008) ("MCL 565.28(1) requires every register of deeds to keep a general index to each set of books by alphabetically entering the name of each party to each recorded instrument. This grantor-grantee index creates the chain of title to a particular property.") (citing 1 Cameron, Michigan Real Property Law (3d ed.), § 11.29, p. 404.).

b. Count IX: Conversion

Similarly, Mr. Maloy has failed to state a claim for conversion against Mr. Monton, as the Property is real property, not personal property. Mr. Maloy believes that because Mr. Monton recorded the Judgment with the Oceana County Register of Deeds, and listed him as a grantor to DVR, that Mr. Monton fraudulently converted Mr. Maloy's property. Michigan recognizes conversion as a remedy for unlawful interference with personal property, not real property. *See* 6 Mich. Civ. Jur., Conversion § 9 ("[a] home is considered real property, not personal property, and therefore outside of the scope of a conversion claim."). As a result, Mr. Maloy does not state a claim for relief against Mr. Monton for conversion.

c. Count X: Quiet Title and Absolute Cancellation of Void Instrument

Mr. Maloy's next count, a quiet title claim, also fails to state a claim for relief. He asserts this quiet title action against Mr. Monton, but Mr. Monton does not claim any interest in the Property—as noted above he merely served as DVR's attorney (agent). M.C.L. § 600.2932 ("Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts *against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff*, whether the defendant is in possession of the land or not.") (emphasis added). Because Mr. Monton does not claim an interest in his own right, the court will dismiss this count against him for failure to state a claim.

Furthermore, to the extent Mr. Maloy attempts to void the Judgment in this count, the court reiterates that it lacks jurisdiction to grant this relief under the *Rooker-Feldman* Doctrine. *See supra* at p. 6, n. 5.

d. Count XIII: Deed Reformation

Next, Plaintiff asks this court to reform the deed due to unilateral mistake, curiously including Mr. Monton in this count. To adequately plead a claim for deed reformation, "a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence. A unilateral mistake is not sufficient to warrant reformation. A mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation." *McPeek v. Allstate Vehicle*, 331 F.Supp.3d 750, 756 (E.D. Mich. 2018) (quoting *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 (Mich. Ct. App. 2006)).

First, there is no colorable claim for relief against Mr. Monton because he was not a party to the original transfer of the Property and does not claim an interest in the Property. *Cf. Cavey v. Bank of America, N.A.*, Case No. 13-11218, 2014 WL 1305037, at *6 (E.D. Mich. Mar. 28, 2014) (finding no colorable claim for deed reformation against a sheriff that conducted a foreclosure sale because he claimed no interest in the property).

Furthermore, the Complaint alleges a unilateral mistake involving a computer software error in which Mr. Maloy could not add two names to the deed, not a mutual mistake. Moreover, the deed itself demonstrates that the grantor (Mr. Maloy's sister) or perhaps the grantee (Mr. Maloy) had no trouble revising it with handwritten changes, making the allegations of an unavoidable computer software error implausible.

Finally, to the extent that Mr. Maloy seeks through reformation some kind of retroactive relief affecting the scope of his exemption protection under 11 U.S.C. § 522(c) or (k) to the prejudice of the chapter 13 trustee or creditors who are not parties to this Adversary Proceeding, the court

regards the count as inconsistent with the process that is due to non-parties who may be affected by the relief requested.[8]

As a result, the court will dismiss Count XIII as it relates to Mr. Monton.

e. Count XIV and XV: 42 U.S.C. §§ 1983 and 1985; Violations of M.R.P.C. 1.9.

Next, Mr. Maloy tags the Defendants as actors in a wider conspiracy, which he hopes to address under 42 U.S.C. §§ 1983 and 1985. To begin, private conduct becomes state action under 42 U.S.C. § 1983 when the conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982). The Complaint does not plausibly assert any such allegation.

Private parties may be state actors for the purposes of a civil rights action under 42 U.S.C. § 1983 if the individuals' actions are either subject to the government's "management or control" or "entwined with governmental policies." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). Additionally, "it is well-settled that a lawyer representing a private client is not a state actor acting 'under color of law.'" *Krukemyer v. Forcum*, 475 Fed. Appx. 563, 566 (6th. Cir. 2012).

Fairly read, all the Complaint's allegations within Counts XIV and XV describe conduct during or in furtherance of Mr. Monton's and his firm's representation of DVR—as private actors acting on behalf of private actors—not due to Mr. Monton's position as the OCPA or subject to governmental control. In essence, Mr. Maloy refers to Mr. Monton's coincidental status as the OCPA as an implicit showing of corruption and state action, but Mr. Maloy does not plausibly point to a single action from Mr. Monton within his role as the OCPA to deprive him of constitutional rights.

---

[8] If Mr. Maloy intends to include his wife as a holder of an interest in the Property as tenant by the entireties for estate planning purposes or otherwise, he may seek permission to transfer an interest to her (and himself) *prospectively* in accordance with his confirmed plan. *See* 11 U.S.C. §§ 363(b) and 1306(b).

Additionally, Mr. Maloy does not plausibly plead that the Defendants caused constitutional deprivation. Instead, Mr. Maloy's alleged constitutional deprivation claims involve two judges in the Oceana County Circuit Court, not the Defendants. *See Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) ("[i]t is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages."). The challenged actions all emanate from the private dispute and the Defendants' role in protecting DVR's rights, either by filing papers with the Oceana County Register of Deeds or the county's Circuit Court.

Mr. Maloy's supposed conspiracy within the ambit of 42 U.S.C. § 1985(3) also fails to state a claim because he does not claim to be a part of a protected class. *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th. Cir. 2022) ("[t]o avoid turning § 1985(3) into a generic tort law covering any injury inflicted by two parties, the Supreme Court has interpreted these two phrases to require 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Therefore, the court will dismiss Count XIV against the Defendants.

Finally, the court will dismiss count XV, which invokes the Michigan Rules of Professional Conduct ("MRPC") premised on the Defendants' supposed conflict of interest. First, Judge Sniegwoski previously addressed the issue in the State Court Opinion, rejecting Mr. Maloy's conflict of interest allegations, stating that despite his renewed submissions before her, "the documentary evidence does not support those allegations." State Court Opinion at p. 3.

And because Michigan's professional responsibility rules do not create a private right of action for conflict-of-interest violations or otherwise, even assuming a conflict of interest, Mr. Maloy has not stated a claim for relief against the Defendants. The drafters of the MRPC were quite clear:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules do not, however, give rise to a cause of

> action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule.

MRPC 1.0(b).

Accordingly, even assuming the preclusive effect of the State Court Opinion does not prevent Mr. Maloy from asserting Defendants' alleged conflict of interest as a basis for substantive relief, MRPC 1.0(b) does. Therefore, Count XV does not state a claim for relief as to the Defendants.

f. Count XVII: Fraud On the Court

Mr. Maloy also alleges that the Defendants committed fraud on the court during the State Court Action and after the Judgment by recording liens against the Property. To prevail on such a claim, he must show "conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

Mr. Maloy's allegations against the Defendant's reiterate already considered-and-rejected issues, necessarily resolved in rendering the Judgment and concluding the State Court Action in DVR's favor. Again, Mr. Maloy points to the supposed conflict of interest under MRPC 1.9, DVR's allegedly stale covenants and restrictions, the recording of the Judgment and Sworn Notice as examples of fraud, and overall "extrajudicial influence on multiple Oceana County officials to harm Plaintiff." Complaint at ¶ 206. Mr. Maloy's "fraud on the court" count, however, improperly rehashes his disdain for the Judgment and Mr. Monton's representation of DVR and does not plead with particularity any actionable conduct on behalf of the Defendants, only a lawyer's efforts to protect his client's interests. Again, like so many other counts, this count depends on the court's finding that the Defendants falsely represented DVR's rights against the Property, but the Judgment in the State Court Action, the Full Faith and Credit Act, and this court's MDO all doom

the main predicate of Count XVII—that the Defendants misrepresented DVR's interest in the Property to the Oceana County Circuit Court.

If there were fraud on the state court, Mr. Maloy may raise the issue within Michigan's court system now that this court has modified the automatic stay precisely to permit him to seek a proper (and direct) review. *See* Base Case, Order dated September 29, 2026, ECF No. 207. Distilled to essentials, the fraud on the court doctrine permits a court to protect *itself* from unscrupulous litigants by revising a judgment infected by fraud and does not license a sister court to revise the judgment—especially not another federal trial court, given the jurisdictional underpinnings of the *Rooker-Feldman* Doctrine. *Iannucci v. State of Michigan*, Case No. 16-cv-10255, 2016 WL 4089215, at *4 (E.D. Mich. Aug. 2, 2016) ("a plaintiff may not avoid application of the *Rooker-Feldman* doctrine merely by alleging that the state-court judgment under attack was procured by fraud.").

The court will dismiss Count XVII, finding no plausible claim for fraud on the court, as against the Defendants.

g. <u>Count XIX: Michigan Collection Practices Act</u>

Similarly, Mr. Maloy's allegations that the Defendants violated the Michigan Collection Practices Act lack merit as a matter of law.

First, Mr. Maloy alleges that Mr. Monton is violating the Michigan Collection Practices Act because he is "manufacturing and producing 17 years of unverified, unlevied statements and invoices containing false information including listing Plaintiff as the addressee at an address he never lived at" and "employing deceptive, unethical and fraudulent means to collect a debt … by Defendant Brian Monton exploiting his position as Plaintiff's former legal counsel to weaponize

confidential Client File No. 8260JP and initiate an adverse conflict-ridden lawsuit against a Prince and Monton PLC former client." Complaint at ¶¶ 225-26.

As the court has stated many times (including in the MDO and today's ruling), the Judgment rejected conflict of interest issues with Mr. Monton's representation of DVR, and the Plaintiff is estopped from relitigating that decision here. Additionally, both the Judgment and the MDO estop Mr. Maloy from challenging the validity of DVR's debt under the guise of a statutory cause of action that depends on a contradictory conclusion. Furthermore, Mr. Maloy tars Mr. Monton's collection practices as deceptive, but fails to plead that Mr. Monton engaged in any deceptive debt collection practices or activity (other than asserting the validity of DVR's lien and interest in the Property).

For these reasons, the court will dismiss Count XIX as it relates to the Defendants.

h. Count XXI: Automatic Stay

Mr. Maloy's final argument, that the Defendants violated the automatic stay by working with local authorities and prosecutors regarding the recent dog bite incident also fails. Mr. Maloy claims that the Defendants are violating the automatic stay due to actively assisting local prosecutors in pursuit of the dog bite incident. Mr. Monton's discussion and aid of Oceana County prosecutors is not a violation of the automatic stay because, "the protections of the automatic stay do not apply to 'the commencement or continuation of a criminal action or proceeding against the debtor.'" *In re Michalski*, 452 Fed. Appx. 656, 657 (6th. Cir. 2011) (quoting 11 U.S.C. § 362(b)(1)). In general, the automatic stay does not shield debtors from criminal process, nor prevent citizens from cooperating with law enforcement; it does, however, forbid creditors from perverting the criminal process to collect a debt, as Mr. Maloy suggests.

Nevertheless, Mr. Maloy has not plausibly pleaded that the Defendants initiated criminal proceedings against him for the purpose of collecting a debt. While there is a split of authority on the role that intent plays in such matters, the court must focus on the precise allegations at issue. *Weary v. Poteat*, 627 Fed. Appx. 475, 478 (6th Cir. 2015) ("there is a split of authority on whether a party's motivation for pursuing criminal prosecution is relevant to determining the applicability of [11 U.S.C. § 362(b)(1)]"). Mr. Maloy's allegations merely show that Mr. Monton aided prosecutors in a criminal proceeding related to an animal incident occurring in close proximity to his client's subdivision, unrelated to the Property, any debt, or Mr. Maloy's bankruptcy. The allegations of a stay violation emanating from the dog bite incident are inadequate and implausible, so the court will dismiss Count XXI as to the Defendants.

i. Count XVIII and XX: Permanent Injunction and Declaratory Relief

Finally, the last two counts, Counts XVIII and XX (regarding a permanent injunction and declaratory relief), describe remedies, untethered to any current misconduct plausibly attributable to the Defendants. They do not support any independent claim for relief.

## V. CONCLUSION AND ORDER

Recently, Mr. Maloy and DVR agreed to lift the automatic stay, allowing both parties to return to the state courts. *See* Base Case, Order dated September 29, 2026, ECF No. 207. If Mr. Maloy is successful in his appeal of the Judgment, he may no longer suffer under its preclusive effect. The reversal or modification of the Judgment may also have implications in his Base Case, perhaps warranting reconsideration of the allowance of DVR's claim or other relief from the MDO to the extent it relies on the Judgment. *See* 11 U.S.C. § 502(j); *see also* Fed. R. Civ. P. 60(b)(5). Until that day, however, Mr. Maloy must live with the prior rulings of Judge Sniegowski and, derivatively, this court.

Finally, the court notes that today's decision does not resolve all of Mr. Maloy's claims against all parties and therefore is not a final order subject to appeal as of right. Fed. R. Civ. P. 54(b).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 11) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Patrick O'Reilly Maloy (by first class mail) and all other parties to this Adversary Proceeding.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 21, 2026**

Scott W. Dales
United States Bankruptcy Judge